The Court of International Trade erred in reversing Commerce's determination to collapse the three affiliated companies in the Verage Group. Particularly, the Court erred regarding both prongs of the collapsing regulation, the 19 CFR section 351.401F, and it also failed in failing to sustain a determination which was supported by substantial evidence. With respect to subsection F1 Could I suggest that you get a little bit closer to the microphone and you perhaps can be even better heard? I apologize, Your Honor. Is that better? Yes, it is. Thank you. Turning first to subsection F1, Commerce found that VAL, VFL, and VIL used the same unaffiliated subcontractor to produce the subject merchandise, and that therefore, each of the three companies was capable of producing the subject merchandise through the subcontractor on their own, which made restructuring manufacturing priorities possible. You should assume that we're quite familiar with the findings of the Commerce Department and both of their forays into these facts, and also of the two opinions by Judge Aquilino. That will save a little bit of time. Very well, Your Honor. The trial court erred when it ignored the findings of fact which it itself recognized. The trial court did not find and did not explain why the factual changes that were made were an insufficient basis for Commerce to conclude that the three companies needed no retooling in order to restructure manufacturing priorities within the same. What do you consider the heart of the error? Where is it that Judge Aquilino went off the proper legal pathway? The court erred in two major ways. First, throughout its determination, it failed to accord Commerce the deference that it's required under the substantial evidence test. In particular, it ignored the findings that Commerce relied upon in its facts with respect to subsection F1. With respect to subsection F2, it replaced findings of fact that Commerce made with an assumption that was not founded within the record. So in that sense, it erred with respect to the application of the substantial evidence test. However, it also made a legal error. It made legal errors in its interpretation of both prongs of the it ignored in ignoring, excuse me, it erred in ignoring subsection H of the regulation. That subsection provides that a subcontractor that is not actually in ownership of the subject merchandise while it is being used to manufacture the subject merchandise into its finished form I thought your argument was that some language in a portion of Reg.401 was misconstrued by the trial judge. But it sounds like what you're really saying is that he failed to implement some other language. Well, I think that with respect to misconstruing subsection, it's not subsection F1 that the trial court made its error in misconstruction with. It's with respect to subsection F2. There, what happened was that the court ignored the three factors that are specifically listed in subsection F2 in order to determine whether there's significant potential for price or production manipulation. Those are common ownership, shared director's facilities and information, and intertwined operations. The trial court did not apply that. Instead, the trial court determined that I thought it was undisputed that the ownership was in common, the officers were in common, the board of directors were in common, and that the production operations of the three entities were coordinated one with another. I thought that was undisputed by everybody, including Judge Aquilino. It is undisputed, and you're right, Your Honor. The trial court did recognize all of those facts, which is why it doesn't make sense that the trial court didn't rely upon them in order to conclude that Commerce was correct in the manner in which it applied the regulation. What the trial court did... How much reliance did the trial court have on Commerce's first findings, its first POR? The trial court seemed to substitute the findings in the first POR for this POR, which was inappropriate. Why was that inappropriate? Because the facts were different. Not only were the facts different, but the trial court so recognized in its opinion, pages 354 and 55, those facts were pertinent to the distinctions under subsection F1 as to whether substantial retooling was necessary in order for there to be a restructuring of manufacturing priorities. That was a finding made by the Commerce Department. It was a finding made by the Commerce Department explicitly in distinguishing the determination in 97 to 98. And there are two different periods of review. That's correct. And this court has... it has settled that each segment of a proceeding is separate and has no binding effect upon the next proceeding. Indeed, in this court's opinion in the Viraj case earlier this year, at 476 F3rd at 1353 and then 1353 to 59, it states that Commerce may depart from a prior collapsing determination so long as the new determination is supported by substantial evidence. And that is what this determination was. There's only one other issue I haven't touched upon, and that is with respect to the final error with respect to subsection F2. And that is that the trial court actually erred in relying upon an incorrect fact. It stated that the Viraj group was not involved in the sale of the subject merchandise back in 97 to 98, but it was. VIL actually produced the subject merchandise. Produced means sent it over to the U.S. to be sold? Sent it to the subcontractor to be rolled into wire rod from the billets. And then it was returned to the entity that sent it, and they then sold it internationally so it becomes a U.S. import? That is correct. And that is what each... So producer equals exporter. Producer equals, in this case under the regulation, the company that owns the subject merchandise as it's being manufactured and then sold. And because the trial court failed to recognize that in all of its determination and instead substituted its own standards for those under the law, the trial court erred. What about the rationale that Judge Aquilino discussed having to do with the idea that the contractor who rolled the billets into wire rod operated at arm's length as a normal commercial entity and that there was no indication of any kind of collusion or participation in an attempt to manipulate production or prices or other relevant facts? It is true that there was no such indication on the record, but that is irrelevant under the standards of the regulation. Under the regulation, all that's necessary in order for there to be significant potential for price or production manipulation, which is the segment F2, which is what the trial court was addressing, all that's necessary is common ownership, as I mentioned before, shared directors, facilities and information, or intertwined operations. The reason being that all three of these companies, after having sent the billets to the wire rod, the billets that they owned, to the subcontractor to be rolled into wire rod, could simply take it, redistribute it amongst themselves, all being affiliated, that's not disputed, and then sell it through the company with the lowest margin. And that's the kind of thing that Congress is trying to stop when it applies the collapsing analysis. And that's what it did here. For the foregoing reasons and the reasons in our brief, we respectfully request that the case be reversed and remanded with the instruction to sustain Congress's initial determination. Now, before you sit down, as a matter of curiosity, I notice that you're not one of the listed authors on the brief. And so I'm curious what happened to Mr. Panzera, who appeared to be the principal author of the brief submitted to us, and how is it that you came to argue the case rather than Mr. Panzera? Mr. Panzera left the office because he won a fellowship to go to Japan, Your Honor. Very well. And are you in the office in Washington or the satellite office here in New York City? I'm in the Washington office, Your Honor. Traveled up here. Very well. Thank you very much, Your Honor. Thank you. Mr. Wendt. Thank you, Your Honor. May it please the Court? You might want to raise the microphone quite a bit since you're a tall man. I'd like to address a couple of points, if I may. First, we do argue that F-1 was misconstrued as far as the second prong. And what I would say is there's a decision tree that you look at the process, the products produced by respondents, companies in an administrative review, and then if they do not produce the same products, then as a second step, you would look at their facilities and whether the facilities can be reused. I thought it was undisputed that the product sold by the three Indian companies to U.S. buyers was a denim. That was not at issue. What was at issue was the significance of that. And Judge Aquilino skipped the significance of from the 97- let me back up. In the 97-98 period of review, Commerce began its analysis by saying that Val and VIL did not produce the same products. Then and only then did they look at whether their facilities could be retooled without substantial investment. Well, let me ask you this. Would you be satisfied if we accepted any of the grounds of reversal that government counsel has argued? Yes. I think the Court of International Trade did not base its decision on substantial evidence. Well, that's what he said. So I'm trying to figure out if you're adding a new ground of reversal over and above those articulated by the government counsel. Yes. And in particular, I would say that the government's brief does not discuss in detail the holding in this court's decision in Verage for stainless steel bar where the court said that the second prong of the collapsing regulation requires an examination of the products produced. And then and only then, if the products are not the same, do you look at whether the facilities and whether those need to be retooled. So what are you saying? That the trial judge took a superfluous step he didn't need to take? Right. What's the harm in that? I mean, if it was superfluous, how does that cause any harm? Because the Court of International Trade said that the facilities are the same as they were in 97-98. And so in his view, there was no change from the prior review to the current review because he looked at facilities. And what we're saying is you never should have got to that second level of facilities to compare the two reviews. It should have been on products produced at both reviews. And if you look at products produced during the prior review, only one company made stainless steel wire rod. And in the second review, both of them did. All right. Thank you, sir. Thank you. We'll take the case under advisement. I just note for the record that the Carpenter Technology Company, although bringing the suit in the Court of International Trade, elected not to appear by brief or in oral argument here today. So that's why we have no argument on the other side. All rise. The honor code is adjourned. Are we safe to turn it back? Thank you. Thank you. Thank you. Thank you. Thank you.